# EXHIBIT 12

Case 2:07-cv-00032-JS-WDW   Document 62-8   Filed 10/20/09   Page 2 of 16
Case 2:07-cv-00032-JS-WDW   Document 58-9   Filed 09/30/09   Page 2 of 4
Case 2:07-cv-00032-JS-WDW   Document 6   Filed 04/25/2007   Page 1 of 3

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

MICHAEL S. KIMM, ESQ.
190 MOORE STREET, SUITE 272
HACKENSACK, NJ 07601
201-342-3377
*Attorney for defendants*
-----------------------------------------------x

| | |
|---|---|
| ILSA MACHINE CORP. d/b.a COLUMBIA DRY CLEANING MACHINES, | 07 Civ. 32 (JS) |
| Plaintiff, | |
| v. | |
| SATEC (U.S.A.), LLC, CLEANERS FAMILY, ABRAHAM CHO, Individually and in His Official Capacity, ESTHER CHO, Individually and in Her Official Capacity and JC CHOI, Individually and in His Official Capacity, | Declaration of Jung Chull Choe in support of defendants' notice of motion to dismiss the complaint |
| Defendants. | |

-----------------------------------------------x

JUNG CHULL CHOE declares:

1. I am one of the defendants in this action and I make this declaration in support of defendants' motion to dismiss the complaint.

2. My name has been misspelled in the caption as "JC Choi." Since September 2002, I have been the publisher and editor of Cleaners Family magazine.



Case 2:07-cv-00032-JS-WDW   Document 62-8   Filed 10/20/09   Page 3 of 16
Case 2:07-cv-00032-JS-WDW   Document 58-9   Filed 09/30/09   Page 3 of 4
Case 2:07-cv-00032-JS-WDW   Document 6   Filed 04/25/2007   Page 2 of 3

3.   Cleaners Family is a trade magazine owned by Abraham and Esther Cho, as a proprietorship, and it is published for the commercial dry cleaning industry. Retailers and wholesalers read the magazine.  I have final authority over all articles and advertising materials disseminated in the Cleaners Family.

4.   This is not the first dry cleaners' trade magazine that I have published. Before Cleaners Family, between 1986 and 1996 I was the first publisher of a dry cleaning trade publication known as Korean Dry Cleaners Times.

5.   Cleaners Family does not have any offices in New York State and generally does not solicit business in New York State.  Neither Mr. Cho nor Mrs. Cho (who are passive owners) nor myself hold any property or maintain any address in New York State.  The magazine is distributed from a mail drop located in Hackensack, New Jersey.

6.   Currently, there are approximately 14,000 readers of Cleaners Family in the United States.  We only print one "version" of the magazine, and the single version contains Korean-language articles and, from time to time, English-language articles or translations.  Thus, any suggestion that any of our articles was written in the Korean language, so as to be surreptitious is contrary to reality. (Paragraph 20 of the complaint by Ilsa Machines Corp. states "It was strategically placed in this Korean version of the Cleaners Family brochure where the

2

Case 2:07-cv-00032-JS-WDW   Document 62-8   Filed 10/20/09   Page 4 of 16
Case 2:07-cv-00032-JS-WDW   Document 58-9   Filed 09/30/09   Page 4 of 4
Case 2:07-cv-00032-JS-WDW   Document 6   Filed 04/25/2007   Page 3 of 3

likelihood of it being discovered by Ilsa was significantly lessened." This is a cynical characterization removed from reality.).

7.   Cleaners Family has a policy of open advertising and it receives advertising commitments from any person or company seeking to place lawful materials.  One of the advertisers is Satec (USA), LLC.  Cleaners Family does not prohibit or exclude or discourage any other dry cleaner manufacturer from placing advertisements.  Had plaintiff desired to place an advertising for its Ilsa machine, Cleaners Family would gladly fill any advertising need, based upon established rates.

8.   According to the complaint, plaintiff takes issue with what it repeatedly states to be the "November 3, 2006, article" but there is no such issue.  Perhaps it is "Volume 6 Number 3" which was issued in "September 2006" but plaintiffs' date appears to be erroneous.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 25, 2007

/s/ Jung Chull Choe

# EXHIBIT 13

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

```
--------------------------------------------x
ILSA MACHINE CORP. d/b/a/                    :
COLUMBIA DRY CLEANING MACHINES               :      07 CV 0032 (JS) (WDW)
                                             :
            Plaintiff,                       :
    -against-                                :
                                             :
SATEC (U.S.A.) LLC, CLEANERS FAMILY,         :
and ABRAHAM CHO, Individually and in         :
His Official Capacity,                       :
                                             :
            Defendants.                      :
--------------------------------------------x
```

Man Soo Roh, hereby state and declare as follows:

1.      I am Man Soo Roh, the owner of two cleaning stores, Palos Park Cleaners and ES Cleaners in the Chicago area. If called as a witness to testify at trial, I could and would testify competently to the matters stated herein.

2.      In or about May 2002, I opened ES Cleaners on 11237 W. 143rd Street, Orland Park, Illinois, 60467. For this new store, I purchased a well known Italian hydrocarbon machine. I purchased this machine on the recommendation of a mechanic. The brand name was Columbia Dry Cleaning HC550 machine.

3.      About 11 months after I began using this machine, the vaporater coil in the machine exploded. After this accident, the laundry started to smell. I tried various means, but could not solve the problem. The mechanic who sold me the machined could not be contacted. I contacted the manufacturer but was told that I had to take care of the problem on my own because the "warranty period" was over.

4.      I called another mechanic and cleaned the machine. That mechanic came to my store and cleaned the steam coil and vaporater coil about three times, but the smell persisted. I also got help from a chemical company to clean the machine. But the problem persisted. In or around late 2003 or early 2004, I had to give up on the machine and had laundry done at my Palos Park Cleaners which was being managed by my wife. However, I had to continue pay for the machine.

5.      In or about May 2006, at the suggestion of Mr. Ki Moon Kim, a Chicago area dealer, I visited a store in the Chicago area named Bellwood Cleaners, where AnyClean brand machine was being used. Mr. Kim told me that AnyClean machine would solve the problems that I was having with the Italian machine.

6.      At the Bellwood Cleaners, I happen to meet Byong Won Cho (also known as Abraham Cho) of Satec USA who was there to check on the installation of AnyClean machine. I had always wanted to meet Mr. Cho since I had heard about him as being an authority on the alternative solvent in cleaning business in the United States. I had read about his new cleaning principles in the cleaning industry magazines, including the Cleaners Family magazine and Korean Cleaner Times and was very interested in the cleaning machines that utilize Mr. Cho's principles, especially since the problems that I had with the Italian machine.

7.      Mr. Cho explained to me as to why he thought I was having problems with the Italian machine and why such problems occurred. I thought Mr. Cho sounded very confident and knew what he was doing.

8.      I now have gathered enough knowledge so as to give lectures on the conditions necessary for a hydrocarbon machine to do laundry. The weight of hydrocarbon should be light so that spinning speed of the drum is high. To do so, the machine should have soft mount

2

structure and have a structure and device that would not allow water and grim to stay in the machine. It seems like the Chicago area cleaners have a poor awareness compared with those in the other areas. I also had a poor awareness before I obtained this new knowledge. Its like I paid expensive tuition to obtain a good education.

9.      It appears that people tend to buy the cleaning equipment from a company or a mechanic with whom they have a business relationship because of their relationship. However, I would suggest that people make a purchase after considering the machine's performance and the commitment of the manufacturer among other things. If the manufacturer or dealer that you bought the machine disappears after the purchase is made the purchaser would have no one to complain to. I believe products offered by Satec USA are reliable since it has been the leader in hydrocarbon machines for the past nine years and it continues to offer more improved and advance products as a result of continuous research and development in this area.

10.      In or about early 2006, I received a telephone call from Mr. J. C. Choe of Cleaners Family magazine. I told him about my experience with the Italian machine and AnyClean machine. Mr. Choe told me that he was writing article on my experience. I gave him a permission to write about my experience. I have read the article that Mr. Choe wrote. The article is accurate depiction of my experience as I told Mr. Choe.


I declare under penalty of perjury that the foregoing is true and correct.


                                    /S/ Man Soo Roh
                                    Man Soo Roh

Dated:  June 17, 2009

# EXHIBIT 14

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
ILSA MACHINE CORP. d/b/a       )
COLUMBIA DRY CLEANING          )
MACHINES,                      )
                               )
                  Plaintiff,   )
                               )
        -against-             )
                               )
SATEC (U.S.A.), LLC,           )
CLEANERS FAMILY, ABRAHAM       )
CHO, Individually and in His Official )
Capacity,                      )
                               )
                  Defendants.  )
-------------------------------------------------------X

Index No. 07 Civ. 00032(JS)(WDW)

**Declaration of Stephen Langiulli in
Opposition to Defendants' Motion
for Summary Judgment**

I, **STEPHEN LANGIULLI**, declare as follows:

1.      I am the Executive Vice President of Ilsa Machine Corp. d/b/a Columbia Dry Cleaning

Machines, Plaintiff in the above-captioned matter, and as such I am fully familiar with the

facts and circumstances set forth herein.

2.      I submit this Declaration in opposition to Defendant's motion for summary judgment.

3.      As my attorney informs me, on this type of motion, the question for the Court is whether

there are disputed issues of material fact which require a trial, or whether the Court may

decided the case as a matter of law based upon the undisputed facts contained in the record.

I have reviewed the Declaration of Man Soo Roh dated June 17, 2009 (Declaration of Steven

-1-

A. Morelli dated October 19, 2009, Ex. 13), which contains what Defendants claim constitute

undisputed issues of fact. For the reasons set forth below, many of the facts contained in Mr.

Roh's declaration are, indeed, disputed.

4.        I do not specifically dispute the assertions made in paragraph 2 of Mr. Roh's affidavit;

however, the model number of the machine Mr. Roh purchased was TLHCS550, not

"HC550" as Mr. Roh states in his declaration.

5.        As to the allegations in paragraph 3 of Mr. Roh's declaration, they are highly in dispute.

First, there is no such thing as a "vaporater coil" in the machine. There is, instead, an

evaporative coil, and that coil is a Freon-charged coil (Freon is a gas), with no water or other

liquid in it. The significance of this is that if the evaporative coil "exploded" as Mr. Roh

claims, any Freon in the coil would simply escape into the atmosphere, thereby leaving

nothing left to make the clothes smell as Mr. Roh claims in paragraph 3 and elsewhere

throughout his declaration. Even if Freon had the ability to disperse into the solvent or onto

garments, a bacteria or odor produced by bacteria would not be possible.

6.        Furthermore, if the evaporative coil "exploded" as Mr. Roh claims in paragraph 3 of his

declaration, necessarily losing its charge of Freon, the machine would not even be able to

function, meaning that no clothes could be washed and no smell could be produced.

7.        Further, I take issue with Mr. Roh's use of the word "explode" in paragraph 3 of his

declaration because the evaporative coil could not explode; it could leak, it could rupture, it could split, but it could not "explode."

8.      I further take issue with Mr. Roh's assertion in paragraph 3 that "[t]he mechanic who sold me the machined [sic] could not be contacted." Mr. Roh did not purchase the machine from a mechanic, but from an authorized Columbia/ILSA dealer, Uniko Corp.

9.      Further, I have searched Columbia/ILSA's records to investigate whether Mr. Roh contacted us as "the manufacturer" as he claims in paragraph 3 of his declaration, and I have discovered that we have no record of Mr. Roh ever contacting us. Further, if Mr. Roh means that he contacted Ilsa S.p.A., our parent company, as the "manufacturer," that it also not true because all calls to Ilsa S.p.A. coming out of North America and South America are routed back to us.

10.     Further, all Columbia/ILSA machines come with a one-year warranty. Thus, if Mr. Roh's machine broke within 11 months as stated in paragraph 2 of his declaration, he would not have been told that the warranty period was over as he claims in paragraph 3 of his declaration. Even if the warranty period was over–for example, the machine broke within 13 months–we have an unwritten policy of covering such problems. In short, and based upon the above, I have no doubt in my mind that Mr. Roh did not contact the manufacturer about any problems with his machine, as he claims in his declaration.

11.   Paragraph 4 of Mr. Roh's declaration is equally confusing. Mr. Roh claims that a mechanic came to his store and cleaned the "steam coil and vaporater coil about three times, but the smell persisted." This assertion makes absolutely no sense in light of the fact that Mr. Roh claimed the "vaporater coil" "exploded." Assuming Mr. Roh means the evaporative coil split or ruptured, "cleaning" the coil would do nothing to fix that problem anyway because the machine would be inoperable. Mr. Roh makes no assertion that anyone ever replaced the broken coil at any point in time. Simply put, and as stated above, no smell could have been caused on the clothing due to a broken evaporative coil because the machine could not even function if the evaporative coil was broken.

12.   The "mechanic" Mr. Roh called to look at his machine, as alleged in paragraph 4 of Mr. Roh's declaration, was Peter Preslick of RAM Parts and Service, 1820 Saddle Hill, Green Oaks, IL. I have spoken with Mr. Preslick at length about Mr. Roh's machine and the allegations Mr. Roh is making. Mr. Preslick reported to me that Mr. Roh's store, ES Cleaners, froze up (meaning the steam coil incorporated inside the machine ruptured or split). This could have occurred only as a result of non-use of the machine during the winter months and an unheated store. To put it another way, it is my understanding that because Mr. Roh was not using the machine during the winter months in Chicago, Illinois, and kept his store unheated during those months, the steam that was in the steam coil turned to water, and that water, only surrounded by copper tubing, froze due to the cold temperature. Once Mr. Roh turned his machine back on, even if he was unaware that the steam coil had ruptured, he would have recognized there was a problem with the steam coil not by smell on the clothing,

-4-

but as a result of damage to the clothes caused by shrinkage. Without getting too technical, it is not possible that a ruptured steam coil would cause any smell on the clothes by itself.

13. Now, no one is disputing that Mr. Roh's machine had an odor to it when Mr. Preslick visited Mr. Roh's store. However, it is the cause of the odor that is highly in dispute. As stated, the odor could not have been produced by an "exploded" evaporative coil or a broken steam coil. The odor in this case was produced by excessive water being in the system and the fact that Mr. Roh was not using the machine on a daily basis, which led to that excessive water remaining stagnant, which allowed bacteria to grow in the stagnant water, which eventually produced mold, which then produced the odor.

14. J.C. Choe, the author of the *Cleaners Family* article that is the subject of this lawsuit, testified that he only wrote what Mr. Roh reported to him, which is essentially what is described in Mr. Roh's declaration. The point of disputing all of Mr. Rho's assertions is that even if Mr. Roh reported these assertions to Satec, Satec and J.C. Choe, purportedly professionals in the dry-cleaning industry, should have recognized that Mr. Rho's assertions and conclusions regarding the cause of the odor were not possible. J.C. Choe also testified that he undertook no investigation of Mr. Rho's assertions, such as by calling Mr. Preslick or Columbia/ILSA for comment. Clearly, Satec's decision to simply print Mr. Rho's conclusions regarding the odor problem in *Cleaners Family* without undertaking any such investigation constituted a reckless disregard for the truth or, at worst, Satec had to know that Mr. Rho's conclusions were wrong based upon its own technical expertise, yet chose to

-5-

ignore it when printing the *Cleaners Family* article.

15.    In paragraph 5 of Mr. Roh's declaration, Mr. Roh claims that in May 2006, at the suggestion of Ki Moon Kim, whom Mr. Roh and the *Cleaners Family* article describe as a "Chicago area dealer," he went to Bellwood Cleaners in order to look at Satec's AnyClean machine. I personally know that Mr. Kim is not a "Chicago area dealer" but is rather a hanger and plastic bag salesman (he sells dry-cleaning supplies). Mr. Kim has admitted to me that he has never sold dry-cleaning machinery for Satec nor any other company, and that he is simply employed by a dry-cleaning supply company.

16.    In paragraph 9 of Mr. Roh's declaration, Mr. Roh states that Satec "has been the leader in hyrdrocarbon machines for the past nine years and it continues to offer more improved and advance [sic] products as a result of continuous research and development in this area." Satec is a company that sells hydrocarbon machines in the industry, but it is far from being a "leader" in the field. Satec's approximate market share is, at most, 10% in the United States, whereas Columbia/ILSA's approximate market share is about 25% in the United States.

17.    Clearly, paragraphs 5 through 10 of Mr. Roh's declaration simply track the nearly-exact language of the *Cleaners Family* article that is the subject of this lawsuit. Moreover, paragraphs 5-10, which discuss in broad strokes about the spinning speed of drums and the mounting structure of the machine, have absolutely nothing to do with a broken steam coil or exploded "vaporater coil."

18. In fact, I am utterly lost at times when reading Mr. Roh's declaration and the *Cleaners Family* article because I wonder whether they attribute any smell in Mr. Roh's machine to a broken steam coil, an "exploded" evaporative coil, the spinning speed of the drum, or the mount structure of the machine. Clearly, the article in the *Cleaners Family* magazine was simply an advertisement for Satec machines, in which Satec disparaged Plaintiff's machines and falsely attributed an odor problem to the design of Plaintiff's machine. Defendants somehow have now gotten Mr. Roh to sign a declaration under penalty of perjury that all of these assertions are the truth. It is my sincere hope that the jury will see the article and Mr. Roh's "testimony" for what it is.

19. At the very least, there are questions of fact regarding all of the above which my attorney informs me precludes the relief Defendants request by their motion.

20. I declare under penalty of perjury that the foregoing is true and correct.

Dated: Highland Mills, New York
       October 19, 2009

                                             Stephen Langiulli